UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WENDY NELSON,

                Plaintiff,

v.                                            8:14-CV-0983
                                           (GTS)
COMM'R OF SOC. SEC.,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OFFICE OF MARK A. SCHNEIDER<br>  Counsel for Plaintiff<br>57 Court St.<br>Plattsburgh, NY 12901 | MARK A. SCHNEIDER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza - Room 3904<br>New York, NY 10278 | KRISTIN D. COHN, ESQ. |

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Wendy Nelson ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g) are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 14, 15.) For the reasons set forth below, Plaintiff's motion is granted in part and denied in part and Defendant's motion is granted in part and denied in part.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on August 23, 1965. (T. 285). She received a GED diploma. (T. 99.) Plaintiff worked as certified nurse's aide ("CNA") and home health aide. (T. 365.) Generally, Plaintiff's alleged disability consists of a myriad of impairments including prior heart attacks, mini strokes, eye problems, pinched nerves, pinched blood vessels, mass on right ankle, degenerative disc disease ("DDD"), form of Parkinson's, restless leg syndrome, depression, post-traumatic stress disorder ("PTSD"), obsessive compulsive disease ("OCD"), and severe gastric problems. (T. 133.) Plaintiff's alleged disability onset date is February 1, 2004. (T. 285.)

### B. Procedural History

This case has a long procedural history. On May 23, 2008, Plaintiff filed a Title XVI application for social security insurance ("SSI"). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 17, 2010 Plaintiff appeared before ALJ Arthur Patane. (T. 33-39.) The hearing was post ponded so that Plaintiff could have her attorney present. On July 16, 2010 Plaintiff appeared, with her attorney, before ALJ Patane. (T. 40-64.) On November 5, 2010, ALJ Patane issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 120-133.) On May 7, 2012, the Appeals Council granted Plaintiff's request for review. (T. 134-137.) On October 12, 2012 Plaintiff again appeared before ALJ Patane. (T. 65-94.) On December 10, 2012 ALJ Patane issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 138-156.) On May 11, 2013 the Appeals Council granted Plaintiff's request for review. (T. 157-161.) On September 12, 2013 Plaintiff appeared before ALJ Thomas

Grabeel. (T. 95-118.) On October 22, 2013 ALJ Grabeel issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-32.) On July 24, 2014 the Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. (T. 13.) Second, the ALJ found that Plaintiff had the severe impairments of major depressive disorder, somatoform disorder, anxiety, PTSD, obsessive compulsive traits, history of incontinence, DDD, and obesity. (*Id.*) Third, the ALJ found Plaintiff's impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 16.) The ALJ considered Listing §§ 12.04, 12.05, 12.06, and 12.07. (*Id.*) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work[1]; however, she was able to "make ordinary work adaptations and interact appropriately with others, but require[d] access to a bathroom and [was] limited to understanding, remembering, and carrying out simple or detailed rather than complex tasks." (T. 17.) Fifth, and finally, the ALJ determined that Plaintiff could perform her past relevant work as a home health aide. (T. 22.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 C.F.R. § 416.967(c)

### A. Plaintiff's Arguments

Plaintiff makes six separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues she meets Listing § 12.07. (Dkt. No. 14 at 31-35 [Pl.'s Mem. of Law].) Second, Plaintiff argues she meets Listing § 12.04. (*Id.* at 35-36.) Third, Plaintiff argues the ALJ failed to fully consider her pain and obesity in combination with her other impairments. (*Id.* at 38-41.) Fourth, Plaintiff argues the ALJ erred in his credibility analysis. (*Id.* at 41-45.) Fifth, Plaintiff argues the ALJ erred by giving "too much weight" to Dr. Hartman. (*Id.* at 45-49.) Sixth, and lastly, Plaintiff argues the ALJ erred by not conducting a medical improvement analysis. (T. 49-50.)

### B. Defendant's Arguments

In response, Defendant makes seven arguments. First, Defendant argues Plaintiff's somatoform disorder did not meet Listing § 12.07. (Dkt. No. 15 at 23-25 [Def.'s Mem. of Law].) Second, Defendant argues Plaintiff's impairments do not meet Listing § 12.04. (*Id.* at 25-26.) Third, Defendant argues Plaintiff's impairments do not meet Listing § 12.06. (*Id.* at 27-28.) Fourth, Defendant argues the ALJ properly considered the combined effects of Plaintiff's impairments. (*Id.* at 28-29.) Fifth, Defendant argues the ALJ correctly found Plaintiff's subjective complaints not entirely credible. (*Id.* at 29-31.) Sixth, Defendant argues the ALJ properly evaluated the medical opinions in the record. (*Id.* at 31-32.) Seventh, and lastly, Defendant argues Plaintiff's prior termination of SSI benefits did not require a medical improvement analysis in the present case.

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the

5

[Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.     ANALYSIS

For ease of analysis, the arguments will be address in a slightly different order.

### A.     Whether the ALJ Erred in His Credibility Assessment

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 14 at 41-45 [Pl.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood,* 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the

7

> following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Here, the ALJ did not conduct a proper credibility analysis. The ALJ concluded Plaintiff's allegations were "credible only to the extent that they [were] consistent with the above residual functional capacity." (T. 22.) Although a "claimant's credibility may be questioned if it is inconsistent with the medical evidence . . . , it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." *Gehm v. Astrue,* 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013); *see also Patterson v. Astrue,* 11-CV-1143, 2013 WL 638617, at *14 (N.D.N.Y. Jan. 24, 2013) ("This assessment of plaintiff's credibility is formed only on the basis of how plaintiff's statements compare to the ALJ's RFC assessment. The ALJ's analysis is therefore fatally flawed, because, it demonstrates that she improperly arrived at her RFC determination before making her credibility assessment, and engaged in a credibility assessment calculated to conform to that RFC determination.").

Courts have concluded that despite this language, an ALJ's credibility determination may still be proper, if the ALJ provided a detailed discussion of Plaintiff's credibility "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270. Such is not the case here because the ALJ's credibility analysis is so limited and vague that his reasoning cannot be determined from a reading of the decision.

Plaintiff specifically argues the ALJ erred because he failed to sufficiently discuss Plaintiff's somatoform disorder in the context of his credibility analysis. (Dkt. No. 14 at 45 [Pl.'s Mem. of Law].) This Court agrees.

The ALJ's extremely limited discussion of Plaintiff's credibility failed to include any reference or discussion of her somatoform disorder. A similar case from this district also explored this issue and concluded, "[a]lthough [a] somatoform disorder does not insulate a claimant from an ALJ's credibility finding, it should be considered." *Tricic v. Astrue*, 6:07-CV-9997, 2010 WL 3338697, at *8 (N.D.N.Y. Aug., 24, 2010), citing *Bell v. Astrue,* 2010 WL 271429 (N.D.Ohio, Jan. 15, 2010) (quoting *Gentry v. Shalala,* 9 F.3d 112, 1993 WL 438622, at *1 (Oct.28, 1993) ("an ALJ may reject the subjective complaints of a claimant suffering from somatoform disorder, so long as the ALJ explicitly considers the somatoform disorder and makes express findings regarding why the claimant's testimony is not credible."). The ALJ's failure to explicitly consider, or even mention, Plaintiff's somatoform disorder in his credibility determination warrants remand.

Plaintiff argues the ALJ erred in failing to consider limitations cause by Plaintiff's spinal disorders and obesity. (Dkt. No. 14 at 38 [Pl.'s Mem. of Law].) At step two the ALJ determined that Plaintiff had the severe impairments of DDD and obesity, but his credibility assessment provides no discussion of these impairments or Plaintiff's allegation of pain relating to them. Therefore, on remand, the ALJ should also take care to discuss Plaintiff's allegation of pain as it relates to her physical impairments.

As this matter is being remanded for a proper credibility analysis, it should be noted the ALJ's credibility analysis if flawed on its face. The ALJ failed to make the threshold determination of whether Plaintiff's underlying medically determinable physical

9

or mental impairments could reasonably be expected to produce Plaintiff's pain or other symptoms. The ALJ should address the threshold question in his analysis on remand. *see Meadors v. Astrue*, 370 Fed.Appx. 179 (2d Cir 2010) (finding error where the ALJ failed to address the threshold question, because the court was unable to "discern whether the ALJ found that: (1) [plaintiff's] contentions of pain are not reasonable consistent with those medical conditions from which she suffers; or (2) [plaintiff's] contentions of pain are consistent with those medical conditions, but the intensity and persistence she identifies are unsubstantiated and her subjective allegations alone are not credible.").

**B.       Whether the ALJ Failed to Properly Evaluate the Medical Evidence**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 14 at 45-48 [Pl.'s Mem. of Law].) The Court adds the following analysis.

The ALJ must consider every medical opinion of record. *See* 20 C.F.R. § 416.927(c). The Plaintiff specifically argues the ALJ failed to properly analyze the medical opinions of consultative examiner, Brett T. Hartmann, Psy.D. and Richard F. Liotta, Ph.D.

Dr. Hartman performed two consultative psychiatric examinations at the behest of the Commissioner, in July of 2008 and in June of 2012. In 2008 he opined in a medical source statement, Plaintiff would be able to follow and understand simple directions and instructions; would be able to perform simple and rote tasks; would have a "fair" ability to perform complex tasks independently; she had "mild" attention and concentration problems; she would have "mild" difficulty maintaining a regular schedule; she would have "mild" problems making appropriate decisions; she would have "mild"

difficulty relating adequately with others; and she would have "moderate" problems dealing appropriately with "normal stressors of life." (T. 767.)[2]

In June of 2012 Dr. Hartman again performed a psychiatric evaluation of Plaintiff. He opined in a medical source statement Plaintiff would be able to follow and understand simple directions; she would have a "fair" ability to make appropriate decisions; she had "mild" difficulty maintaining attention and concentration; she had "mild" difficulty maintaining a regular schedule; she had a "mild" learning impairment; she had "moderate" difficulty relating adequately to others and she had "moderate" problems dealing appropriately with the normal stressors of life. (T. 974.)

Dr. Hartman also provided a "Medical Statement of Ability to Do Work-Related Activities (Mental)" form. (T. 976-78.) Therein he opined Plaintiff had "marked" limitations in her ability to 1) understand and remember complex instruction and 2) carry out complex instructions. (T. 976.)[3] He observed Plaintiff had "moderate" limitations in her ability to make judgments on complex work-related decisions. (*Id.*) He further observed Plaintiff had "moderate" limitations in her ability to 1) interact appropriately with the public, 2) interact appropriately with supervisors, 3) interact appropriately with co-workers and 4) respond appropriately to usual work situations and to changes in a routine work setting. (T. 977.)

Dr. Liotta met with Plaintiff on May 21, 2010 and June 11, 2011. Dr. Liotta examined Plaintiff at the request of Clinton County Department of Social Services to

---

[2] The AC Order dated May 11, 2013 noted the ALJ decision on December 10, 2012 provided Dr. Hartman's opinion "great weight;" however, his opinion that Plaintiff had "moderate limitations" in her ability to interact with the public, supervisors and coworkers did not correspond to the ALJ's step four decision that Plaintiff could perform her past work as a home health aide as this position required frequent interaction with others. The ALJ was ordered to remedy this discrepancy on remand (T. at 159.)

[3] The medical source statement form from Dr. Hartman provided the following definitions: Marked – there is serious limitation in this area. There is a substantial loss in the ability to effectively function. Moderate – there is more than a slight limitations in this are but the individual is still able to function satisfactorily.

evaluate her "psychiatric status and ability to participate in work related activities." (T. 887.) Dr. Liotta met with Plaintiff and reviewed medical records which contained Dr. Hartman's 2008 examination, a psychiatric review technique completed by Social Security dated September 9, 2008, and mental health records from Clinton County Mental Health. (T. 888-89.) Dr. Liotta observed Plaintiff had some memory difficulties, her abstracting ability was good, her general fund of information was adequate, she was able to do serial threes, and she was able to do basic calculations. (T. 892.)

Dr. Liotta administered the Bender Gestalt Test and the Repeatable Battery for the Assessment of Neuropsychological Status ("RBANS"). Dr. Liotta opined that the results of the RBANS test showed immediate memory was in the "extremely low range," delayed memory was "severely impaired," and attention was in the "extremely low range." (T. 893.) Dr. Liotta interpreted the results to "strongly indicate" a cognitive disorder. (*Id.*) He also opined testing showed a "decline in functioning." (*Id.*) Dr. Liotta concluded that Plaintiff's ability to "concentrate and persist" was markedly impaired; Plaintiff's memory skills, attention and concentration were "quite limited;" her ability to tolerate stress was "low;" and she was at risk for "deterioration" under stressful circumstances. (T. 894.) He opined that overall, Plaintiff would not be able to maintain employment at a gainful level. (*Id.*)

The ALJ provided Dr. Hartman's opinion that Plaintiff was unable to work with complex instructions and adapt to changes "significant weight," because it was "not inconsistent with the [. . .] residual functional capacity." (T. 21.)[4] He afforded Dr. Hartman's opinion that Plaintiff had "moderate" difficulties interacting with others in a

---

[4] Of note, the ALJ afforded the opinion of Dr. Krishnakumar, Dr. Kim and Dr. Hameed "significant weight . . . to the extent that they are consistent with . . . the above residual functional capacity." (T. 22.) This language is troubling because it implies that the ALJ came to a RFC conclusion before weighing the medical evidence in the record.

12

work setting "considerably less weight." (*Id.*) The ALJ reasoned the opinion 1) conflicted with Dr. Hartman's assessment in 2008, 2) conflicted with the reports of Dr. Krishnakumar and Dr. Hameed, 3) conflicted with Plaintiff's admission to Dr. Liotta that she maintained friendships and 4) conflicted with Dr. Liotta's opinion that Plaintiff had "adequate" social functioning. (*Id.*)

The ALJ's reasoning is flawed. Substantial evidence supports Dr. Hartman's conclusion that Plaintiff had "moderate" difficulties interacting with others. Contrary to the ALJ contentions, Dr. Liotta's opinion does not conflict with Dr. Hartman's. Dr. Liotta noted that Plaintiff stated she gets along with people, has some friends, and gets along with her boyfriend's friends; however, Dr. Liotta states in the following sentence, "it is likely she has more difficulty relating to others and communicating clearly with others than she acknowledged." (T. 890.)

Further, the ALJ reliance on Dr. Krishnakumar's July 2011 notation of a Global Assessment Functioning ("GAF") score of "60.70" is misplaced (T. 20 referring to T. 930.) Dr. Krishnakumar's assessment also supports Dr. Hartman's. Dr. Krishnakumar signed a report dated August 24, 2011, in which he observed Plaintiff had "moderate challenge[s]" in social functioning and self-direction. (T. 938.) The notations further indicate that as a criteria of discharge Plaintiff would have "no significant impairment in functioning" and a GAF greater than 55, as her GAF at the time was 51. (T. 939.)

The ALJ afforded Dr. Liotta's opinion "very little weight," because he 1) was not a treating physician, 2) he "accepted [Plaintiff's] reports at face value," and 3) his opinion regarding her difficulty concentrating was not supported by medical evidence. (T. 19.) However, Dr. Liotta based his opinion on objective medical testing that he conducted, medical evidence supplied to him, as well as Plaintiff's self-reporting. (*see* T. 892-894.)

13

Also, as discussed above, Dr. Liotta's opinions find support in the medical record, specifically Dr. Hartman's and Dr. Kirchnakumer's assessments.

Therefore, this matter is remanded for a proper evaluation of medical evidence; specifically, the opinions of Dr. Hartman and Dr. Liotta.

### C. Whether the ALJ Properly Evaluated the Listings

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's brief. (Dkt. No. 15 at 23-28 [Def.'s Mem. of Law].) The Court adds the following analysis.

The ALJ's step three findings are supported by substantial evidence. The ALJ relied on the State medical consultant Dr. Hameed, consultative examiner Dr. Hartman, and Plaintiff's physician Dr. Krishnakumar. Even if the ALJ relied on Dr. Liotta's opinion that Plaintiff had marked limitations in the area of concentration, persistence and pace, the Listing criteria still would not have been met. Although this matter should be remanded for a proper evaluation of the medical evidence at step four, the ALJ's step three analysis was supported by substantial evidence and remand is not necessary in this area.

### D. Whether the ALJ Properly Evaluated Evidence of a Prior Claim

The Plaintiff appears to argue that because Plaintiff previously received SSI benefits, and was terminated for a non-medical reason, the ALJ was required to presume the disability continued and conduct a medical improvement analysis in his subsequent determination. (Dkt. No. 14 at 49 [Pl.'s Mem. of Law].)

The record regarding Plaintiff's previous receipt of SSI benefits is not complete. However, it is apparent from the information provided, that Plaintiff began receiving SSI

benefits in August 2004 (T. 374) and benefits ceased in May of 2007 due to income ineligibility (T. 914). Plaintiff then re-applied for benefits on May 23, 2008. (T. 285.)

The Ninth Circuit, which so far is the only Circuit to directly answer the specific question of whether an ALJ is required to presume a disability continues after a non-medical termination of benefits, concluded an ALJ "is not required to presume that a previous disability has continued through a non-medically related termination of benefits." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1172 (9th Cir. 2008). The Second Circuit has not answered this question; however, has held, "[t]he existence of a prior established disability is highly relevant when the nature of that disability appears to be the very same cause of the alleged disability then under examination." *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984). Here, the nature of Plaintiff's pervious disability is unknown; therefore, it cannot even be determined if her prior disability is relevant or not. As this matter is being remanded for the reasons stated in Part IV.A and B, it would be prudent for the ALJ to discuss Plaintiff's previous disability claim to determine what relevance, if any, it may have on her current claim.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED** in part and **GRANTED** in part; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: June 26, 2015
Syracuse, NY

Glenn T. Suddaby
U.S. District Judge